Good morning. May it please the Court, I'm Justin Denlinger. My name is Justin Denlinger and I represent the Defendant Appellant Kia Cameron in this action. My client Mr. Cameron is actually in the courtroom with us today. I would like to reserve a few moments for rebuttal. Okay. Unless this panel requires a brief recitation of facts or has any preliminary questions at this time, I'll get right to the two brief issues that I wish to augment in the de novo review of the District Court's order denying my client's anti-SLAPP motion. De novo, of course, being the appropriate standard articulated in Vest v. Sivagagi, an opinion by Judge Fletcher. Here, Appellant is being sued for various causes of action premised on the idea that he represented more than one client. And that's really the first issue I want to address, that my client, the Appellant, only had one client himself. That's the merits of the underlying argument. I mean, I understand the argument, but there's some dispute about this. Exactly, Your Honor. Exactly. My client was always told that this was just a Dakar family business, was a single family business. He was informed that Mindys, the respondent, was the trade name that the family business was entitled Sonya Dakar. It was referred to by the family members as Sonya Dakar. The suffixes of all the e-mail addresses of all the family members of the family business was at SonyaDakar.com. The phones were answered Sonya Dakar. Here, respondent has argued in the District Court incorrectly found below that my client, Appellant, was simultaneously serving two masters, both Mindys, respondent, and Sonya Dakar. Well, this just isn't the case. At all relevant times, leading up to the May 28, 2007 filing of the two trademark applications, up to and including that time and even beyond, there was only one family entity. There was no dispute that when my client filed those two trademark applications that what he was doing was in the best interest of the family business. There were no factions at that time. It was one unified family business. It wasn't until approximately a year later, in late 2008, before there was any post hoc argument by Mindys, by respondent, that my client somehow had a conflict of interest in registering these two trademark applications. But I don't think in this posture of the case, the question is squarely presented to us whether your client violated his duty to one side or the other or to both. The only thing the district judge did with respect to the slap claim was say, assuming that this is protected conduct, which it may or may not be, the district judge thought it was not, that there's a probability of success. The district judge has not said that your client loses. So whether your client wins or loses is not in front of us. If we decide that it was protected conduct for his filing, if the filing of the registration was protected conduct, I guess we have to get to the question of whether it was probable or not. But the question as to who wins is not squarely in front of us. Understood, Your Honor. Thank you for the clarification. I'll move along to my second issue then. And that is, it is cited, as was cited in the previous case right before us, the Hurtado argument, the Navalier v. Slatton case. Despite what respondents, attorneys would have this belief that the anti-slap statute doesn't apply to certain causes of action, that's just not the law in California. Navalier v. Slatton, which this Court must follow, as it's a California Supreme Court case, quote, says, nothing in the anti-slap statute excludes any particular type of action from its operation. So the focus isn't on the cause of action, but on defendant's activity. Well, if the activity is alleged to be conflict of interest, why isn't that somewhat removed from the actual filing, just as malpractice would be? Your Honor, if I may, the premise that's alleged in the complaint itself, as are the papers before the Court, is that the actual filing of the two trademark applications, that was the actual legal malpractice. The conflict of interest is rolled in as part of that. And moreover, even if that's not the case, I draw the Court's attention to the Peregrin case, which we cite with frequency in our moving papers, which did find, with Peregrin being a California appellate court case of the First District, that found that the anti-slap statute applied even though a subject complaint was, quote, unquote, mixed, since some of the allegations constituted a protected activity and other allegations did not. In a mixed action, quote, unquote, the anti-slap law will apply, as was revealed in Peregrin. Well, the definitional focus, I think, of the statute, the anti-slap statute, is the activity that gives rise to the asserted liability. How do we decide, in this case, whether it's the alleged breach of the fiduciary duty or it's the filing of the trademarks? Because it makes a big difference as to whether the anti-slap applies or not. How do you distinguish between the two in this case? If I may, Your Honor, I hear Your Honor saying that, and please correct me if I'm wrong, that a breach of fiduciary duty may not be covered under the anti-slap statute? Well, the question is what is the activity that's the basis for the asserted claim against your client? Is it the filing of the trademark or is it the alleged breach or malpractice or a conflict of interest or however you want to describe it? How do we decide that issue? What are the factors we take into account? If Your Honor is asking if I understand correctly, what is the basis for it? Yes, it is indeed, in fact, the filing of the trademark applications with the United States Patent and Trademark Office. That is correct. And that's what it's based on. And like I said, if also rolled in there would be, even if one were to assume that breach of fiduciary duty and other actions may be barred in a particular slap motion, Peregrine stands for the proposition that it can be rolled in there in a mixed suit, as it were. If there are no further questions, I'll reserve the rest of the time. I have a question. The last few questions have been trying to approach the case basically the way the district judge did on the question of protected activity, the idea being, well, the registration of the trademark was folded into what's alleged to have been malpractice. And maybe that means there's not protected activity because the overall characterization is malpractice. I'd like to go specifically to the question of registration itself. Let's assume that we just have a question of registration. What do we have in California law that says that an action petitioning the government for what is effectively a ministerial act is protected activity under the anti-slap statute? I would draw Your Honor's attention in particular to, and it's cited in the brief, I believe it's on page 19 of our opening brief, the Computer Express v. Jackson case, which states that for purposes of anti-slap, a communication to an official administrative agency designed to prompt action by that agency is part of a quote-unquote official proceeding. And what were the facts in that case? I can pull them, Your Honor. I don't have them. It's right in front of me. But my problem is that that general language, I think, may fairly be read to encompass what's going on here. But I'm not sure that's what was intended because the origin for the anti-slap statute was, as I'm sure you well know, it was citizens complaining about various developments. The developers would then sue the citizens who were going to the city council or the Board of Adjustment trying to intimidate them. And that was expanded from just people, citizens, speaking up in front of a Board of Adjustment or whatever to lawsuits and so on. I don't know that I've got any California case law that gives me a factual extension, an extension of the anti-slap statute to the factual instance of simply going to the government and filing something that is essentially a ministerial act, such as filing a registration or in California, if you're doing it under state law, just registering the title of a car. So I'm not sure the anti-slap statute goes that far with this definition of protected activity. That's my problem. Okay. Understood, Your Honor. And admittedly, there is a dearth of case law out there on this very subject. The closest I think I can come to answering Your Honor's question would be to cite two particular cases, one being a California Supreme Court case that's also cited in our papers, Slaughter v. Friedman, wherein it further developed that idea of official proceeding, wherein it said, An official proceeding has been interpreted broadly to protect communications to and from governmental officials which may precede the initiation of even formal proceedings, end quote. And furthermore, if I can just draw Your Honor's attention back to Peregrin, again, a case we cite with some frequency, the facts in that case align somewhat similarly with what's happening here. There, the Peregrin concerned attorneys petitioning activities on behalf of a client before a federal administrative body in an alleged conflict of interest case. Again, that's a California Court of Appeals opinion. That's about the best I can answer that. Beyond that, speaking of Peregrin, Your Honor, just in the interest of a full disclosure, there have been at least two courts that have come down, I want to say, and I have their names here, Credit Wave Corporation and Robles v. Cialopoli, that have come down with respect to Peregrin, interpreting it in a different way. Essentially, as I'm sure Your Honors are aware, there's a split of authority at the California appellate level in the districts. And so there is no California Supreme Court directly on case saying whether or not one should follow, when analyzing anti-slap motions, follow the California Court of Appeals, or excuse me, follow the cause of action and focus on that or focus on the actual conduct. Okay. Thank you. Now, we've taken you, in fact, past your time, but we'll give you a chance to respond. Thank you, Your Honors. Good morning, Your Honors. May it please the Court, my name is Lee Werner and I represent the appellee, Mindy's Cosmetics, Inc. I have some comments. The focus of the appellant's brief was that the attorney-defendant believed that he represented the family business. But he billed, I think the record shows he billed an entity, my client, Mindy's Cosmetics, Inc. And according to my reading of the briefs, the record shows that there were prior trademark registrations filed for Mindy's Cosmetics, Inc. for the two trademarks at issue. But the second trademarks that were filed were on behalf of an individual, Sonia Dakar. My understanding was that the first trademarks were filed in the name of Sonia as well. Actually, at least the record I saw was it was filed in the name of Donna Dakar, which is a daughter, and then with the agreement that she transfer those rights to Mindy's Cosmetics, Inc. She was a shareholder. She still is a shareholder of Mindy's Cosmetics, Inc. But in any event, the initial trademarks were not filed in the name of the company. That's correct. It was in the name of Donna, and according to the brief I read, she was to transfer to Mindy's Cosmetics, Inc. We can make sure that we get that one right. Okay. We'll look. We know, though, that the record shows that the attorney defendant, the appellant in this case, he billed Mindy's Cosmetics, Inc. for the work he did, or he billed them $31,000 over a couple of years, but he filed the trademark application on behalf of somebody other than the entity that was paying him. So as I see this case, Your Honor, and the cases are cited, this is not anything more than a garden-variety legal malpractice claim. Well, it's more than a garden-variety. I mean, he gets caught up in the middle of a family feud. That's true, but that happens quite a bit. A lot of families have businesses, and these things happen. I think you've got to look out for the conflicts when you get involved with the company and the family. And I know one of the justices asked the question, you know, what do you look at? And there's a case called Kohler, which tells you what you look at. The question is, what does the claim arise from? It didn't arise from the filing of a trademark application. It arose from the conflict of interest that the defendant attorney had that he didn't either recognize. But it arose from, but then the act that you're complaining of is the filing of the trademark. Sure, sure. I mean, that is the sole act that you say constitutes a malpractice, as I understand your lawsuit. Well, I mean, the lawsuit is he should have, if he was going to file for Sonia, he should have told the clients, you know, I'm going to file for Sonia. He should have disclosed the conflict of interest. He should have recognized the conflict and disclosed it. And I gather some of the facts are disputed, but I think I've got it right that the charges that he has, he says he talked to everybody except Israel. You may be right about that. I know they talked to Yigal, and at that point in time, Yigal wasn't with the company anymore, didn't have shares of the company, wasn't involved in the company as an employee or an officer. If there had been no filing of the trademark registration, there wouldn't have been a case, right? I suppose you're right. I suppose you're right. Because the allegation certainly is that that harmed Mindy's. But, you know, I know the court also raised the question of is this the type of activity? Is this petitioning activity? Is this the filing of a trademark application by an attorney on behalf of a client? Is that the kind of activity that the California legislature intended to protect when it passed the anti-slap statute? And I won't go beyond the briefs, but the briefs indicate it isn't the type of activity. So the first hurdle is, is it a protective activity? And the second hurdle is, the question is whether the anti-slap, whether this defendant can take advantage of the anti-slap statute. And I think they lose on both counts. And unless the court has other questions of me, I'm willing to submit on what the papers say and what we've said today. Any further questions? Okay. Thank you. Thank you. Mr. Vanager, we'll give you a chance to respond. Thank you, Your Honors. I will be brief, as I realize I'm really out of time. No, it's okay. No, say what you need to say. I just want to address one brief issue, and that has to do with the Kohler case that was brought up by my esteemed colleague. I would just like to point out his language referencing the garden variety legal malpractice really referenced the, if one looks at the facts, the garden variety legal malpractice referenced in that case is a passive legal malpractice. In that case, I believe there was discovery that was alleged that was not completed or done. And there's a distinction drawn in that case that active legal malpractice is a separate matter entirely. And furthermore, just to reiterate, it appears to be, Kohler, as an appellate court case, appears to be in conflict with the California Supreme Court case of Navalier, which I cited earlier. But with that, unless the Court has any further questions for me. I have one question, and that is, can the anti-SLAPP statute is aimed at protecting people who are doing some sort of First Amendment activity, and I can understand why filing a trademark application might be Sonia's First Amendment activity. Why is it the First Amendment activity of her attorney? Your Honor, I can address that. I don't know if I have it in my notes. I know we cover it in our moving papers. If memory serves, I can't recall the exact case, but I believe there's a California appellate, if not California Supreme Court case that we cite in our moving papers that says very early on, I believe in the summary of arguments section, that says that that very thing addresses that very issue, that it does not have to be the First Amendment rights or petitioning rights of that individual. It can be an attorney on someone's behalf. Well, the statute says the person. It doesn't say that person. So you might be right on the interpretation of the statute. It also seems to be implied in the malpractice cases because somebody is going after an attorney and the SLAPP issue comes up. And, of course, they get around it by saying the filing wasn't the issue, but somebody at least seemed to think that the attorney would raise the SLAPP issue. So, but thank you. That's all. Okay. Thank you, Your Honor. Thank you both. Thank you both sides for their argument. Mindy's Cosmetics v. Cameron is now submitted for decision.
judges: Tunheim, Canby, Fletcher W.